*Decision will be entered under Rule 50.*

OLEN F. FEATHERSTONE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MARTHA FEATHERSTONE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

OLEN F. FEATHERSTONE AND MARTHA FEATHERSTONE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 37809, 37810, 37811. Filed June 30, 1954.

*Floyd K. Haskell, Esq.*, for the petitioners.
*Everett E. Smith, Esq.*, for the respondent.

766

OPINION.

Van Fossan, *Judge:* Petitioners contend that the payments made by them for the first year of the lease term of the Federal and State

oil and gas leases herein involved are "rentals" within the meaning of section 23 (a) (1) (A),[1] Internal Revenue Code, and therefore deductible as business expenses from gross income. Alternatively, petitioners assert that such payments are deductible as nonbusiness expense under section 23 (a) (2), Internal Revenue Code.[1] Respondent, on the other hand, contends that such first-year payments represent the cost of acquiring economic interests in oil and gas in place and are, therefore, nondeductible capital expenditures. Respondent relies principally upon Regulations 111, section 29.23 (m)–1 and section 29.23 (m)–10, which read in pertinent part, respectively, as follows:

SEC. 29.23 (m)–1. DEPLETION OF MINES, OIL AND GAS WELLS, OTHER NATURAL DEPOSITS, AND TIMBER; DEPRECIATION OF IMPROVEMENTS.—

\* \* \* \* \* \* \*

An economic interest is possessed in every case in which the taxpayer has acquired, by investment, any interest in mineral[2] in place or standing timber and secures, by any form of legal relationship, income derived from the severance and sale of the mineral or timber, to which he must look for a return of his capital. \* \* \*

SEC. 29.23 (m)–10. DEPLETION—ADJUSTMENTS OF ACCOUNTS BASED ON BONUS OR ADVANCED ROYALTY.—(a) \* \* \* In the case of the payor any payment made for the acquisition of an economic interest in a mineral deposit or standing timber constitutes a capital investment in the property recoverable only through the depletion allowance.

It should be noted that Regulations 111, section 29.23 (m)–10 is specifically concerned with the treatment to be accorded "bonus" or "advanced royalty." Respondent, however, has not argued here that the payments in question were in the nature of "bonus" or "advanced royalty." His position appears to be that any payment, irrespective of its characterization by the parties, for the first year of the lease term of an oil and gas lease is a capital expenditure and hence nondeductible. It is our view that respondent is inconsistent when he asserts, on the one hand, that first-year payments represent the cost of acquiring economic interests in property which should be capital-

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.
  In computing net income there shall be allowed as deductions:
  (a) EXPENSES.—
    (1) TRADE OR BUSINESS EXPENSES.—
      (A) In General.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including \* \* \* rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.

      \* \* \* \* \* \* \*

      (2) NON-TRADE OR NON-BUSINESS EXPENSES.—In the case of any individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.
[2] "Minerals" are defined in Regs. 111, sec. 29.23(m)–1(d) to include oil and gas.

ized and, on the other hand, concedes the deductibility of payments for subsequent lease years and of so-called delay rentals.

The typical delay rental is normally paid at the end of the first year and of each subsequent year during which drilling has not commenced. Once drilling has begun the lessee is free to exploit the property for its mineral content without having to make any further payments of this kind. Delay rentals have been described in *J. T. Sneed, Jr.*, 33 B. T. A. 478, 482, as being " * * * in the nature of liquidated damages or penalties for failure to drill upon, or exploit, the properties" and in *Commissioner* v. *Wilson*, 76 F. 2d 766, 769, as accruing " * * * by the mere lapse of time like any other rent." In contrast to royalties, which are not paid for time but for oil and gas taken or to be taken out of the ground, delay rentals are not subject to depletion by the payee, *J. T. Sneed, Jr., supra; Commissioner* v. *Wilson, supra*, and are deductible by the payor as a business expense, *Charles H. Merillat*, 9 B. T. A. 813. Respondent would have us distinguish between delay rentals and the first-year payments involved in this proceeding. It is our opinion, however, that the two differently styled payments are nevertheless in substance the same. Both are fixed sums paid in advance to secure for the payor the right to hold the lease for the succeeding year or designated period without the necessity of drilling wells or making further payments, except royalties on the mineral produced. Neither payment is deemed compensation for the mineral extracted from the soil, although, in the event of production, the first-year payment may be credited against current royalties.[3] But that would be true also of payments for subsequent lease years, which payments respondent here concedes are deductible. Moreover, even if it is true, as respondent alleges, that a lessee acquires an economic interest in oil or gas in place upon making a first-year payment, it is, in our opinion, equally true that a lessee retains a similar interest on paying a delay rental. It would seem then that the delay rentals possess no fewer attributes of a "capital investment" than do the annual payments in the case at bar. Yet for tax purposes it is undisputed that delay rentals are deductible by the payor and nondepletable by the payee. In this connection, it is interesting to note the applicability to the first-year payments here in question of the rationale behind the nondepletability of delay rentals as set forth in the following excerpt from Revenue Ruling 16, 1953–1 C. B. 173, 174:

Such payments are nondepletable items of income to the lessor, since the requisite diminution in the value of his capital interest in the leased property, resulting from a conversion of capital into income to give the depletion provisions operative effect, did not occur upon such payments. Certainly, there was no diminution

---

[3] Of the leases here involved only the Colorado lease fails to provide for the crediting of rental against current royalties.

in value attributable to the extraction and sale of the natural resource content of the land as occurs in the case of ordinary production royalty payment. Nor can such payments qualify as advance royalty payments to establish the requisite diminution in value in the lessor's interest resulting from such payments as in the case of either (1) a bonus payment upon the execution of a lease (which presumptively reduces future production royalty payments to the lessor), or (2) royalty payments in advance of production, such as minimum royalty payments which may be credited as royalty payments on production in future years.[4]

See also I. T. 3401, 1940–2 C. B. 166, wherein it was stated that "* * * for Federal income tax purposes [quoting from G. C. M. 11197, XII–1 C. B. 238] 'there is no distinction between the term "rent," in the sense in which that term ordinarily is used, and "delay rentals".' " It should also be noted that, in both *Charles H. Merillat, supra,* and *Continental Oil Co.,* 36 B. T. A. 693, annual payments that could not have been avoided by drilling were nevertheless treated in the same way as the typical delay rental.

With respect to the Federal leases herein involved, petitioners' case is strengthened by the fact that Congress expressly characterized the first-year payment as "rental" and clearly distinguished it from the "bonus" that a lessee of a competitively bid lease was required to pay in addition to the "rental." Furthermore, it is not reasonable that the Congress, presumably familiar with the provisions of section 23 (a) (1) (A), Internal Revenue Code, would denominate a payment "rental" without intending it to be a deductible expense as in the case of the ordinary rental. The leases issued by the various States are similar to the Federal leases in scheme and substance. All provide for annual payments in advance of a fixed sum and all describe such payments as "rentals." We, therefore, conclude that the first-year payments made pursuant to the leases here involved were true rentals and are deductible under section 23 (a) (1) (A).

Since these payments were made in the ordinary course of petitioners' business, we need not consider their alternative contention under section 23 (a) (2).

It should be emphasized that our decision here is not necessarily dispositive of a case in which the payment claimed by the taxpayer as a deductible expense (or determined by the Commissioner as non-depletable income) is made in respect of a year in which the mineral is produced in paying quantities. See sec. 114 (b) (3), I. R. C.; *James Lewis Caldwell McFaddin,* 2 T. C. 395.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

---

[4] Note that the minimum royalty payable on the Federal lease following discovery and in advance of production is not applicable to future royalties.